IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. <u>RDB-08-0144</u> |
| | ) | |
| HENRY COLE, | ) | |
| | ) | |
| Defendant. | ) | |

********

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL

The United States of America, by its undersigned counsel, respectfully opposes defendant's motion for a new trial.

**Legal Standard**

Rule 33(a), Fed.R.Crim.P., gives to a district court the power to grant a defendant's motion for a new trial "if the interest of justice so requires." The Fourth Circuit has observed,

> "We have held that a district court should exercise its discretion to grant a new trial 'sparingly' and that the district court should grant a new trial based on the weight of the evidence 'only when the evidence weighs heavily against the verdict.' <u>United States v. Arrington</u>, 757 F.2d 1484, 1486 (4th Cir.1985)."

<u>United States v. Wilson</u>, 118 F.3d 228, 237 (1997); <u>accord,</u> <u>United States v. Smith</u>, 451 F.3d 209, 216-7 (4th Cir. 2006).

**The Weight of the Evidence Supports the Verdict**

In the instant case, the jury found that Mr. Cole had made false statements on his tax returns in Count One, by falsely reporting $950,000 of income as capital gains on Schedule D for the 2001 tax year; in Count Two, by falsely reporting $600,000 of income as capital gains in the

1

2002 tax year; and in Count Three, by falsely reporting $450,000 of income as capital gains and by willfully failing to report $98,200 of income in the 2003 tax year. The jury also convicted Mr. Cole of tax evasion for tax years 2001, 2002 and 2003. Their verdict was fully supported by the evidence.

As is obvious from Mr. Cole's argument, his expert witness, the certified public accountant James Wilhelm, was the chief proponent of the view that the monies in question were short term capital gains. The jury was free to reject that view in light of the overwhelming factual evidence that Mr. Cole had considered the monies to be commission income during the time period when he received the monies, had signed real estate contracts and settlement statements reciting that the funds were commission income, had deposited checks which noted that the funds were for real estate commissions, and had sworn under oath in response to interrogatories in a civil case that the funds were commissions. Mr. Cole concedes that the documentary evidence in the case shows that the funds were commission income:

> "[t]he government undoubtedly will point to the documents referring to the payments in question as commissions, and it is true that the contracts, settlement sheets and other documents did refer to the payments as commissions." Defendant's Motion at 4.

While Mr. Cole doesn't mention the testimony of the sellers, the title company attorney who closed the transactions, and John Evans, the Coldwell Banker supervisor of Mr. Cole, he could easily have conceded that they all testified that they understood that Mr. Cole was receiving real estate commissions. Thus the verdict was not against the **weight** of the evidence because the only evidence that the monies were short term capital gains was from Mr. Cole's own expert.

Defendant's motion for new trial relies almost exclusively upon the opinions of Mr.

2

Wilhelm and Michael Blair, the tax return preparer.  Blair admitted that he reviewed none of the real estate settlement records for the five real estate transactions at issue and knew nothing about the $98,200 which Mr. Cole retained from receiving the payment for the sale of the $1 million promissory note from the Glick partnership to Dr. Passen's children.  Mr. Wilhelm admitted that he had originally formed his opinion that the real estate commissions were actually assignment fees based on his belief or assumption that Mr. Cole had made the down payments which accompanied the execution of the real estate contracts. Mr. Wilhelm had originally thought that since Mr. Cole made the down payments with his funds, that he owned the contracts and assigned them to the partnerships in exchange for a fee.   When asked on cross examination about the consequences to his view if Drs. Friedler and Passen had provided the funds for the down payments, he admitted that if the doctors had made the down payments, then they would have had an interest in the real estate contracts.  He pointed out that the contracts <u>could have</u> belonged to Henry Cole if the doctors had loaned the money to Cole to enter into the contracts.  But of course Mr. Wilhelm realized that this was only a hypothetical possibility.  Drs. Friedler and Passen explicitly testified that they paid monies as the down payments on the properties to reserve the properties for their as yet unformed real estate partnerships.  Their testimony was corroborated by the fact that they made their down payment checks payable to Coldwell Banker (which was the real estate brokerage holding the down payment funds), or to an already formed partnership of theirs, which in turn paid Coldwell Banker.  None of the down payment checks furnished by the doctors was ever made payable to Cole personally which is what one would expect if the doctors were **loaning** money to Cole.    When the defense cross examined the doctors, the doctors were never even **asked** if they were loaning money to Cole for him to make

3

the down payments and then assign the contracts to their partnerships. If Mr. Cole lacked the exclusive ownership interest in the real estate contracts, he couldn't have been receiving the entire assignment fee at settlement.

While the defendant argues that the jury verdict is contrary to "logic and common sense," Motion at 3, in fact, it is the defense's argument that is missing a necessary logical step and a critical piece of evidence. While any lawyer or accountant would agree that a real estate contract is a capital asset, what was missing from the defendant's case was any proof linking the payments, consistently denominated "commissions," to assignment fees. Mr. Cole now states that the monies were supposed to be payments from the partners to acquire the rights to the contract, but Mr. Cole did not characterize the payments to Carol Ann Wildesen at the title company as "assignment fees" nor did he mention "assignment fees" to his supervisor John Evans nor did he use words which could be interpreted as "assignment fees". [1] Mr. Cole told Ms. Wildesen and Mr. Evans that he was receiving real estate commissions beyond the commissions on which Coldwell Banker expected to be paid, and Mr. Evans agreed that Mr. Cole could receive commissions on which Coldwell Banker would not take its percentage. All the contract documents show, and all the sellers believed, that Mr. Cole was receiving real estate commissions. There was only one real estate contract that had an actual assignment. It recited no monetary value for the assignment at all, and hence could not be linked to the payments Mr. Cole received. The payments Cole received were on the seller's side of the settlement sheet and

---

[1] Mr. Cole understood the concept and the term "assignment fees" because the 113 West Road transaction had "assignment fees" in the contract documents and on the buyer's side of the settlement sheets. Thus the jury could reject Mr. Wilhelm's suggestion that in the four real estate transactions in 2001-2002, the parties meant "assignment fees" and mistakenly called them "commissions."

were denominated "commissions," while if the payments had been assignment fees, they should have been on the buyer's side of the settlement sheets and denominated "assignment fees." The jury could fairly conclude that the payments were commissions. Mr. Wilhelm's and Mr. Blair's opinions were based upon a **desire** that the payments had been made to acquire a capital asset because that conveyed substantial tax benefits to Mr. Cole. That **desire** went in search of a capital asset and fastened upon the assignment of contracts, but no witnesses or parties to the transactions supported that view, and in fact, the witnesses and parties contradicted the "assignment fee" theory.

Another flaw with Mr. Cole's motion for new trial is that it fails to address the 2003 tax year when the sellers refused to pay the commission but transferred the funds to the partnership for use by the partnership, as Mr. Hopkins testified. In 2003, Mr. Cole took (misappropriated or embezzled) this money by having Ms. Bart write a check to him and deposit it into a bank account that Mr. Cole controlled. Mr. Cole never made his partners aware of the existence of the $450,000, the bank account at Susquehanna that he put it into, or Ms. Bart's transfer of the money to his company Valley Real Estate. Mr. Cole testified that he thought the Woodside transaction was like the others, but in fact, the partnership received this $450,000 at the time of settlement from the sellers for the partnership's use. There was no support in the evidence for the idea that the buyers paid an assignment fee to Mr. Cole.

Mr. Cole argues,

> "Two certified public accountants testified that the funds in question were properly reported as short term capital gains, and frankly, the jury was not in a position to judge that these two accountants were wrong as a matter of law. And unless Blair and Wilhelm were wrong, logic dictates that reporting the income in question as short term capital gains cannot be false." Defendant's Motion at 4-5.

5

Mr. Cole's view is that the jury was required to side with his two accountants and was not free to reject their expert testimony. The jury evaluates expert witness testimony just as they do any witness' testimony. The jury is free to accept or reject expert testimony, in whole or in part. The government had its own expert witness on whom the jury could rely. But perhaps more significant than the expert testimony, was the proof of the underlying facts; Mr. Cole's partners never knew about the payments to Mr. Cole; as Mr. Wilhelm testified, a person can't purchase something without being aware of it. If the jury credited the doctors' testimony that they were unaware of the payments to Mr. Cole, then the monies could not have been assignment fees because the ostensible purchaser didn't know they were buying anything.

Mr. Cole is not entitled to a new trial because the verdict is against neither the weight of the documentary or the testimonial evidence.

**Defendant Failed to Seek a Jury Instruction on Capital Gains vs. Ordinary Income**

Mr. Cole complains that "[w]ithout appropriate instructions from the Court as to the elements of a capital gains transaction, the jury was not qualified to determine beyond a reasonable doubt that Luca was right and Wilhelm and Blair were wrong." Motion at 5. Defendant failed to ask for jury instructions as to income versus short term capital gains. He cannot now claim an error in the jury instructions when he did not request such as instruction. Moreover, the issue for the jury was: what were the payments for? The jury rejected the defendant's factual assertion that the payments were for the assignment of the contracts. Only Mr. Cole's and Mr. Wilhelm's testimony linked the payments to assignment fees. In fact, the government was able to show that in one deal (113 West Road) which had an assignment of the contract, there was an assignment fee paid by the buyer and reported on the buyer's side of the

6

settlement sheet.[2]  The jury could have properly found that the "assignment fee" theory was made up long after the events in question for the purpose of putting the money on the capital gains schedule (Schedule D), because all the contemporaneous evidence showed that the funds were commission income for 2001 and 2002 and misappropriated money for 2003.

**Government Jury Arguments that Defendant Failed to Object To, Do Not Support New Trial Motion**

Mr. Cole also argues that the fact that Drs. Friedler and Passen had provided the down payment funds for the real estate contracts should not have been a part of the government's argument.  Testimony and documents (cancelled checks) supported this argument, and Mr. Cole did not object to this argument at trial.  Defendant's own expert conceded that Mr. Cole's ownership claim for the real estate contracts would be undermined by proof that he did not make the down payments.  Because Mr. Cole had the "legal right" to assign the contracts doesn't mean that he could sell that right to the doctors without their knowledge and through payments concealed as "commissions."   The government's argument was tied to the evidence in the case that refuted Mr. Cole's story that he entered into the contracts and then "shopped" them to potential buyers, including the doctors who formed the partnerships with him.  The jury had ample evidence to find that Mr. Cole entered into the contracts with the doctors' money because the parties contemplated that the Cole/doctors' partnerships would be purchasing the properties.  Thus Cole was not in a position to charge and collect an "assignment fee," and he did not do so.  Cole's failures to request jury instructions on capital gains or to object to the government's argument based upon the testimony of his own expert are simply Monday morning

---

[2]Capital gains treatment of this assignment fee was not alleged in the Indictment or Superseding Indictment as false.

quarterbacking which does not provide any basis for the Court to exercise its discretion to overturn the jury verdict and grant a motion for a new trial.

**The Government's Rebuttal Argument Relied Upon Impeachment Evidence**

Mr. Cole also argues that the government in its rebuttal argument misused the Rule 404(b), Fed.R.Evid., which was admitted by the Court in the government's case-in-chief. This argument overlooks the fact that the defendant testified in his own behalf and was impeached by the Rule 404(b) evidence, his prior conviction, and prior inconsistent statements. The jury was required to make a credibility determination regarding the defendant. The defendant was impeached by his previous false statements under oath on government forms, and the rebuttal argument correctly pointed that out. The defendant did not object to this argument at the time it was made and could not have done so. There was no error in the argument.

**Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion for a new trial.

    Respectfully submitted,
    ROD J. ROSENSTEIN
    UNITED STATES ATTORNEY

By: /s/ _____
    Joyce K. McDonald
    Assistant United States Attorney

    /s/_____
By: David Copperthite
    Assistant United States Attorney

CERTIFICATE OF SERVICE

This is to certify that on this 2nd day of March 2009, a copy of the foregoing Response was sent by electronic service to counsel of record, namely Max Lauten and Richard Karceski.

_/s/_____
Joyce K. McDonald
Assistant United States Attorney